UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERRY P.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 1:25-cv-00360 (JGW)

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 7), Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 11), and Plaintiff's reply brief (Doc. 12). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On April 28, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of April 12, 2022. (Tr. 83, 249-

55.) Plaintiff then filed an application for supplemental security income on May 2, 2022 alleging the same disability onset date. (Tr. 96, 239-48.) Plaintiff's claims were denied initially and on reconsideration. (Tr. 108, 109, 122, 123.) He then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 167-68.) Plaintiff appeared with counsel for a telephone hearing before ALJ Bryce Baird held on March 18, 2024. (Tr. 32-64.) On May 30, 2024, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 15-31.) Thereafter, the Appeals Council denied Plaintiff's request for review, (Tr. 1-7), and Plaintiff timely filed his appeal to this Court.

### B. Factual Background

Plaintiff was born February 18, 1981. (Tr. 82.) He completed eleventh grade and did not obtain a GED. (Tr. 42.) He initially alleged his disabling conditions to include rods and pins in left leg, plates and screws in left arm, hands going numb, carpal tunnel in left wrist, and traumatic brain injury. (Tr. 83.) He did not allege any additional impairments at the reconsideration level. (*See* Tr. 110-15.)

#### 1. Plaintiff's Hearing Testimony

At the beginning of the hearing, the ALJ asked Plaintiff's counsel to identify the severe impairments believed to render Plaintiff disabled. (Tr. 36.) Counsel identified right shoulder pain status post arthroscopy, and she also noted he experienced chronic neck pain with cervical displacement at the C5 and C6 level. (*See id.*)

Plaintiff testified that he has severe back pain, neck pain, and shoulder pain. (Tr. 48.) He also noted that he previously had shoulder surgery. (*See id.*) He explained his neck pain was the result of a slipped disc and herniated discs in his neck, as well as disc

issues in his back. (*See id.*) He indicated that he takes medications for his back spasms and for his pain. (Tr. 48-49.)

Plaintiff also described his physical limitations. He indicated that if he sits for more than fifteen or twenty minutes, he can barely get up because his legs are numb. (Tr. 49.) He often lays down. (*Id.*) He estimated he could walk about a quarter of a mile before needing to sit and take a break. (*Id.*) He clarified that, despite what was written in a record referenced by the ALJ, moving around a lot does not make his pain better. (Tr. 50.) He further noted that lifting things, working overhead, and looking up also increased his pain. (Tr. 51.) He explained that he could not stoop, squat, crouch, or kneel down. (Tr. 52.) He indicated he could lift about ten or twelve pounds. (*Id.*) Plaintiff also described that his impairments and the associated pain have gotten much worse. (Tr. 53.) He noted that he cannot look straight up or down, and he is also limited in turning to the sides. (Tr. 55.) Getting out of bed is also difficult, and he explained that he also struggles to stay focused due to his pain. (*Id.*) He described even being awoken by sharp pains. (Tr. 56.)

Plaintiff further identified limitations in his daily activities. He indicated he could only prepare TV dinners, could not stand long to do the dishes, never went food shopping, and could only vacuum or sweep for a few minutes. (Tr. 56-57.) He also did not do the laundry. (Tr. 57.) His wife helps him dress to some extent. (*Id.*) Plaintiff further testified that, although he had a driver's license, he did not drive because sitting in the car causes sharp shooting pains from his back down to his knee through his legs. (Tr. 39.) He also explained that he experienced numbness in his legs, and so he was concerned that the numbness would interfere with his ability to depress the gas or brake pedals. (*See id.*)

He also described limitations in his ability to fully turn his head due to his neck pain. (*See id.*)

In response to certain questions the ALJ asked about statements made in September 2023 to a medical provider that his shoulder pain was minimal, he had no limitations in his activities, and although he experienced a popping sensation, it was only an annoyance, Plaintiff indicated that, after that time, the pain got significantly worse. (Tr. 53.) The ALJ also asked Plaintiff about certain activities in which he engaged, and which caused pain, but nonetheless reflected that he played with his son, performed some yard maintenance tasks, and built school projects with his son. (Tr. 40.) Plaintiff again emphasized the increase in his pain.

**2. Vocational Expert Testimony**

At the hearing, the ALJ examined a vocational expert (VE). He proposed a hypothetical to the VE, asking her to assume a hypothetical individual of Plaintiff's age, education, and with past work experience commiserate to Plaintiff's. (Tr. 60.) He asked her to further assume that the individual be limited to lifting and carrying on occasion up to twenty pounds, lifting and carrying frequently up to ten pounds; sitting up to six hours in an eight-hour day; standing or walking for up to six hours in an eight-hour day; only occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching, but no crawling. (*See id.*) He asked her to further assume that the individual would be limited to frequent reaching in all directions other than overhead and no reaching overhead. (*See id.*) Finally, he asked her to assume no exposure to hazards such as unprotected heights or moving machinery and no exposure to excessive vibration. (*See id.*) The VE testified that the hypothetical

individual could not perform Plaintiff's past work, but did identify the jobs of marker, sales attendance, and cashier two as available to the hypothetical individual. (*See* Tr. 60-61.) The VE also provided testimony as to acceptable off-task time and absences. (*See* Tr. 61-62.)

The ALJ then addressed the question of the consistency of the VE's testimony with the DOT:

> Q. Is the testimony that you've given here today consistent with the Dictionary of Occupational Titles?
>
> A. All of consistent, however, the DOT does not address [off] task times, missed time from work or specific overhead reach. Those issues are based on my training and experience.
>
> Q. All right. So I limited to frequent reaching in all directions other than overhead bilaterally and no overhead reaching. These jobs that you identified, they require reaching, correct?
>
> A. Correct.
>
> Q. But they don't require overhead reaching?
>
> A. Correct.

(Tr. 62.)

**3. Medical Expert Opinions**

Agency reviewer Dr. Brauer conducted an initial review on Plaintiff's file and concluded that Plaintiff was capable of light exertional work with certain postural limitations, specifically that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl. (*See* Tr. 90-91, 103-04.) On reconsideration, agency reviewer Dr. Miller noted that Plaintiff did not allege any new or worsening symptoms. (*See* Tr. 114, 120.) After reviewing Plaintiff's file and the initial reviewer's conclusions, he found Plaintiff could perform light exertional work with slightly

different postural restrictions, including that Plaintiff could occasionally climb ladders, ropes, and scaffolds (but had no limitations on climbing ramps and stairs); occasionally stoop, but unlimited ability to kneel, crouch, and crawl. (*See* Tr. 113, 118-19.) He also assigned manipulative limitations, including limited right overhead reaching. (*See* Tr. 113, 119.)

Consultative examining expert Dr. Hongbiao Liu also evaluated Plaintiff. (Tr. 416-19.) As the ALJ recognized:

> Dr. Liu observed reduced cervical and lumbar range of motion as well as reduced shoulder motion, but normal gait, full squat and normal strength and sensation in the upper and lower extremities, with the exception of some reduced sensation in the left hand, and concluded that the claimant has mild limitations for several exertional and postural activities.

(Tr. 24.) Specifically, Dr. Liu opined that Plaintiff had mild limitation "for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing." (*See* Tr. 418.)

The record does not contain any treating source statements. (*See* Tr. 37.)

### C. ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027. (Tr. 20.)

2. The claimant has not engaged in substantial gainful activity since April 12, 2022, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.). (Tr. 20.)

3. The claimant has the following severe impairments: right shoulder SLAP tear with surgical repair; cervical disc herniations (20 CFR 404.1520(c) and 416.920(c)). (Tr. 20.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 21.)

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, can sit for 6 hours in an 8 hour day, can stand or walk for 6 hours in an 8 hour day, can occasionally climb ramps and stairs, can never climb ropes, ladders or scaffolds, can occasionally balance, stoop, kneel and crouch, can never crawl, can frequently reach in all directions other than overhead with both upper extremities, can never reach overhead, can never be exposed to excessive vibration or hazards such as unprotected heights and moving machinery. (Tr. 21.)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). (Tr. 24.)

7. The claimant was born on February 18, 1981 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). (Tr. 24.)

8. The claimant has a limited education (20 CFR 404.1564 and 416.964). (Tr. 24.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 24-25.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). (Tr. 25.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 12, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). (Tr. 26.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B. Standard to Determine Disability

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation

to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues that remand is appropriate for two reasons. First, he contends that in making his step five finding, the ALJ erred by failing to identify and resolve a conflict between the VE testimony and the DOT. (Doc. 7-1 at 11.) Second, he argues that the ALJ failed to evaluate the severity of multiple impairments at step two of the sequential evaluation. (*See id.*)

### A. The ALJ Did Not Err in his Step Five Evaluation.

Plaintiff contends that the ALJ did not adequately resolve a conflict between the VE's testimony and the DOT regarding reaching. (*See id*. at 11-16.) Specifically, Plaintiff notes that the ALJ included a limitation that Plaintiff never reach overhead, yet the jobs identified by the VE require "frequent" reaching. (*See id.* at 12.) Plaintiff argues that, although the ALJ identified the conflict, he failed to actually resolve it, requiring remand. (*See id.* at 13-15.)

At step five, the Commissioner has the burden to demonstrate that a claimant can perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. *See* 20 C.F.R. § 416.920(g). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [Plaintiff is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). If the ALJ chooses to rely on the testimony of a VE at this step five, the ALJ "must be alert to the possibility of 'apparent unresolved conflict[s]' between th[at] testimony and the [DOT]." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019) (quoting Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). That is, the ALJ has an "independent, affirmative obligation . . . to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [VE] if there is one." *Id.* at 94 (internal citation, quotation marks and alterations omitted). "When there is an apparent unresolved conflict between VE . . .evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR-004p, 2000

WL 1898704, at *2.[1] The Second Circuit later found that an ALJ properly relied on a VE's testimony after "specifically ask[ing] about both potential conflicts and the vocational expert provided an explanation that included an analysis based on his own expertise and labor market surveys he conducted." *Reilly v. Comm'r of Soc. Sec.*, No. 21-8-cv, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022).

At the hearing, ALJ Baird specifically asked the VE whether her testimony conflicted with the DOT, and she acknowledged that the DOT does not address certain aspects of her testimony, including overhead reaching. (*See* Tr. 62.) She noted that her testimony as to those facets of the jobs were based on her training and experience. (*See id.*) The ALJ then followed up, noting that he limited Plaintiff to no overhead reaching and confirmed that the identified jobs did require reaching, which the VE acknowledged. (*See id.*) The ALJ then expressly asked: "[b]ut they don't require overhead reaching?" (*Id.*) The VE affirmed that conclusion. (*See id.*) Plaintiff's counsel did not further inquire as to the VE's testimony on this point, nor did she object to the VE testifying. (*See* Tr. 59, 62.)

This colloquy goes beyond the circumstances before the Second Circuit in *Lockwood*. In that case, the only question posed by the ALJ to that VE was whether the opinion was consistent with the DOT, to which the VE responded it was. *Lockwood*, 914 F.3d at 93. Here, the ALJ explored the basis for the opinion, confirming that the VE considered the reaching limitations for the specific positions she opined were available and that her opinion was sufficiently supported. As the ALJ recognized in his decision:

[1] This Court is aware that on January 6, 2025, the Social Security Administration issued SSR 24-3p, "rescinding SSR 00-4p and [] no longer requir[ing] adjudicators to identify and resolve conflicts between occupational information provided by [vocational specialists] and [vocational experts] and information in the [DOT]." SSR 24-3p, available at https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html, (last visited September 29, 2026). However, this regulation does not apply retroactively. *Id.* at n.1.

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The DOT does not differentiate between overhead reaching and other reaching, which the claimant can perform frequently, which is consistent with the DOT description. The vocational expert testified that the jobs can be performed with the restriction for overhead reaching based on her experience.

(Tr. 25.)

Several other decisions have found such an inquiry to be sufficient. *Barbara W. v. Comm'r of Soc. Sec.*, No. 1:22-cv-575-TPK, 2025 WL 276668, at * 6 (W.D.N.Y. Jan. 23, 2025) (finding that the ALJ sufficiently resolved the conflict between the DOT and the VE's testimony when the ALJ acknowledged the conflict and the expert provided testimony about why he believed the jobs did not require overhead reaching, which opinion was based on his experience with the jobs identified); *Jetaun C. R. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1489, 2022 WL 7085513, at *4 (W.D.N.Y. Oct. 12, 2022) (noting that a VE is permitted to rely on his experience regarding job requirements when the DOT is silent and finding the ALJ obtained a reasonable explanation to the apparent conflict); *Alisa O. v. Comm'r of Soc. Sec.*, No. 20-CV-00564-FPG, 2021 WL 3861425, at *5 (W.D.N.Y. Aug. 30, 2021) (recognizing that the VE "further indicated that her opinion that Plaintiff could perform occupations requiring such reaching abilities was based on her knowledge of how those specific jobs were performed" and finding remand was not required).

While Plaintiff relies on other cases within this district, the Court finds them unpersuasive and distinguishable. Here, the VE's testimony was clear that she was aware that the jobs identified were classified as requiring reaching and that, based on her experience, the jobs she named did not require overhead reaching—which was the

limitation assigned by the ALJ. (*See* Tr. 62.) This testimony adequately resolved the apparent conflict. *See Barbara W.*, 2025 WL 276668, at * 6; *Jetaun C. R.*, 2022 WL 7085513, at *4; *Alisa O.*, 2021 WL 3861425, at *5.

Therefore, the Court finds that the ALJ adequately resolved the apparent conflict regarding overhead reaching and concludes the ALJ's step five finding was supported by substantial evidence.

**B. The ALJ Properly Evaluated Plaintiff's Impairments.**

Plaintiff next argues that the ALJ failed to evaluate the severity of several impairments that existed during the relevant period, and he further failed to account for those impairments in the RFC. (*See* Doc. 7-1 at 16.) Specifically, Plaintiff contends that the ALJ did not identify any non-severe impairments, thereby ignoring Plaintiff's lumbar spine impairment, thoracic spine impairment, and migraine headaches. (*See id.* at 17.)

Plaintiff focuses his argument on the ALJ's alleged lack of analysis on the severity of certain impairments, but he misses a preliminary step: whether these conditions are even medically determinable impairments. To qualify as medically determinable, an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. "Whether something is considered a medically-determinable impairment is influential to the remainder of the decision because 'only medically determinable impairments can be considered severe or non-severe, [and] only limitations stemming from severe and non-severe impairments are considered in formulating an RFC.'" *Bruce Wayne C. v. Comm'r of Soc. Sec.*, No. 5:21-

CV-160 (CFH), 2022 WL 1304024, at *12 (N.D.N.Y. May 2, 2022) (quoting *Talbot v. Colvin*, No. 3:13-CV-1249 (GTS), 2015 WL 5512039, at *6 (N.D.N.Y. Sept. 15, 2015)). Indeed, an ALJ must "consider all of [a plaintiff's] medically determinable impairments of which [he or she is] aware, including [the] medically determinable impairments that are not 'severe[.]'" *Id.* (quoting 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

Plaintiff has identified five records in support of his contention that the ALJ should have evaluated his lumbar spine, thoracic spine, and migraine headaches, but he does not explain how these records support his argument. (*See* Doc. 7-1 at 17) (citing Tr. 424, 599, 606, 703-04, 730.) Having reviewed these records, the Court finds that they do not establish that any of Plaintiff's identified conditions satisfy the definition of a medically determinable impairment, and so the ALJ was not required to consider them in his decision. Indeed, the Court notes that Plaintiff never identified a thoracic or lumbar impairment as being disabling, either in his filings or at the hearing. (*See* Tr. 36, 83.)

First, three of the notes reflect Plaintiff's own reports of headaches. (*See* Tr. 424, 599, 606.) Subjective reports alone are insufficient to establish a headache impairment.[2] *See* 20 C.F.R. §§ 404.1521, 404.1429(b); Social Security Ruling (SSR) 19-4p. No doctors, at these or any other visits identified by Plaintiff, identified relevant abnormalities. Nor does Plaintiff identify any treatment for headaches or testify to functional limitations resulting from headaches. Plaintiff's identified evidence is insufficient to establish headaches as a medically determinable impairment.

[2] The Court recognizes that there was a diagnosis in some of his records as "headache, unspecified," but it is well-settled that a mere diagnosis is insufficient to establish an impairment. *See Holstrom v. Comm'r of Soc. Sec.*, No. 1:19-CV-00445(JJM), 2020 WL 3989349, at *3 (W.D.N.Y. July 15, 2020) (recognizing that "a diagnosis alone is insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities") (internal citations and quotations omitted).

As to Plaintiff's alleged thoracic and lumbar impairments, the two notes he identifies from late 2023 and early 2024 reflect only slight abnormalities. (*See* Tr. 703) (reflecting self-reported pain and some tenderness; characterized prior MRI of thoracic spine as "unremarkable"); (Tr. 729-30) (reflecting unremarkable t spine x-ray; noting that lumbar x-ray reveals "mild multilevel lumbar spondylitic changes with no spondylolisthesis"). Thereafter, although MRIs were ordered, Plaintiff did not attend nor return for further treatment. But more importantly, Plaintiff has not identified functional limitations resulting from these alleged conditions that would be more stringent than what the ALJ assigned. In sum, Plaintiff has simply not shown he is *incapable* of performing such work, which is his burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that a plaintiff has the burden to prove a more restrictive RFC). Thus, Plaintiff has not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order). As such, the ALJ's determination stands.

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: September 30, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge